[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15158

_____

D.C. Docket No. 4:11-cv-03325-VEH

RANDALL HUFFSTUTLER,

Plaintiff - Appellant,

versus

GOODYEAR TIRE & RUBBER COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 28, 2013)

Before CARNES, Chief Judge, TJOFLAT, Circuit Judge, and EVANS,[*] District
Judge.

PER CURIAM:

---

[*] Honorable Orinda D. Evans, United States District Judge for the Northern District of
Georgia, sitting by designation.

Randall Huffstutler, who receives a pension that is covered by ERISA from Goodyear Tire & Rubber Company, sued Goodyear, seeking to overturn the plan administrator's decision denying his request to change his retirement benefits. Huffstutler contends that a clerical error by a Goodyear employee caused him to receive a monthly pension check that is less than he should be receiving.

## I.

Huffstutler retired from Goodyear on January 1, 1997 and began receiving a disability pension under the company's 1950 Pension Plan. Around the time that he retired, Huffstutler and his then-wife met with Bettie Pierce,[1] an employee in Goodyear's human resources department, so he could select how he wanted to receive his pension. He reviewed the different options with Pierce, told her which option he wanted, and she checked the corresponding box on the election form. On Huffstutler's form, the box for "Option A" — which provides a reduced monthly payment after the first five years but continues benefits to his wife if he predeceases her — is checked. In addition, the name and birthday of his then-wife are written directly underneath the description of "Option A" and the signatures of both Huffstutler and her appear on the second page of the form, as does Pierce's signature as a witness.

---

[1] At the time, Bettie Pierce used the name Bettie Williams.

2

Sometime during the first five years of his retirement (while he was still receiving the full monthly payment) Huffstutler and his wife divorced. When he received notice that his monthly payment was going to be reduced pursuant to his election of "Option A," Huffstutler wrote a letter to Goodyear asserting that he had elected "No Option" — which provides full monthly payments to him for life and no benefits to a surviving spouse — and that "Option A" was checked only because of a clerical error on the part of a Goodyear employee. With that letter, he included a letter from his ex-wife that said the same thing. Gary Dannemiller, Goodyear's manager of pension and insurance operations, responded to Huffstutler in a letter informing him that his "claim for a change to [his] pension option election . . . has not been approved" and notifying him that he could submit his claim for further consideration to the Benefits Review Committee. Huffstutler did that, but his claim was denied. He sent a letter stating that he wanted to appeal to the ERISA Appeals Committee, but nothing happened.

Nearly nine years later, Huffstutler, through his attorney, wrote a letter to Goodyear asking "that the decision of 'no option' be implemented immediately and no more money be withheld from his retirement and he be fully repaid all money that has been withheld after 60 months with interest." Attached to the letter were two affidavits: one from Huffstutler and one from his ex-wife. Both said that Huffstutler chose "No Option," not "Option A." Dannemiller forwarded the

3

request to Goodyear's ERISA Appeals Committee, which met regarding it on June 20, 2011.

The ERISA Appeals Committee considered the letters and affidavits that Huffstutler had submitted, and he and his attorney participated in the meeting by phone. The Committee also considered Dannemiller's description of the process that the company used when a retiree selected his pension benefits, and it contacted Pierce to ask her about Huffstutler's form. Soon thereafter, the Committee denied Huffstutler's appeal, finding that he had "validly elected with the signed consent of . . . his wife at the time of retirement . . . Option A" and that his claim he had selected "No Option" was not credible.

## II.

Huffstutler sued Goodyear in state court seeking to overturn the ERISA Appeals Committee's decision. See 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."). Goodyear removed the case to federal court. The district court decided that the Committee's decision was correct and entered judgment to that effect. This is Huffstutler's appeal of the district court's judgment.

"We review de novo a district court's ruling affirming or reversing a plan administrator's ERISA benefits decision, applying the same legal standards that governed the district court's decision." Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011). The first step in reviewing the administrator's decision is always the same: review the plan administrator's decision de novo to determine whether it was right or wrong, i.e., whether we agree or disagree with the decision. Id. at 1355. If we conclude that the decision was right, we affirm it and our inquiry ends. Id. We move on to the next steps of our analysis only if we conclude that the decision was wrong. Id.

## III.

Applying the de novo standard of review, we conclude that the Committee correctly denied Huffstutler's appeal because his assertion that he chose "No Option" is not credible. Huffstutler's allegation that a Goodyear employee made a clerical error by checking the wrong box is implausible. Huffstutler's election form clearly indicates an intent to select "Option A," and there is little or no chance of confusion between "Option A" and "No Option." The checkbox for "Option A" is located near the top of the first page, while the checkbox for "No Option" is near the bottom of the second. "Option A" asks for the spouse's name and birthdate, and that information is provided on Huffstutler's form. "No Option"

5

asks for the name of a beneficiary and that beneficiary's relationship to the employee, and neither of those lines is completed on his form.

Although the evidence shows that Pierce actually filled out the form, it also shows that she filled it out the way she did with the knowledge and consent of Huffstutler and his then-wife. First, there is no contention that the name or birthdate of Huffstutler's ex-wife are incorrect, which suggests that either he or his ex-wife provided that information to Pierce when she was filling out the election form. Second, although Huffstutler claimed before the Appeals Committee that the signatures on the election form did not belong to him or his ex-wife, that allegation is contradicted by his ex-wife's affidavit, in which she admits that she had signed the form. The fact that the form was signed by a witness also tends to corroborate the authenticity of the signatures of Huffstutler and his ex-wife.

For those reasons, we agree with the Appeals Committee's finding that Huffstutler's factual allegations are not credible. Because the Committee's decision was <u>de novo</u> right, the district court's judgment upholding it is affirmed.[2] See <u>Blankenship</u>, 644 F.3d at 1355.

---

[2] Huffstutler contends for the first time on appeal that he is entitled to equitable reformation of the pension plan based on Goodyear's unilateral mistake of selecting the wrong option on the election form. Because he did not seek that relief or advance that theory in the district court, we will not consider it. See <u>Access Now, Inc. v. Sw. Airlines Co.</u>, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.").

**AFFIRMED.**

---

Also, because we conclude that the Appeals Committee's decision was <u>de novo</u> right, we do not address Huffstutler's arguments that the Committee did not have discretion in reviewing claims, that its decision was otherwise arbitrary and capricious, and that its decision was improperly influenced by a conflict of interest.  <u>See</u> <u>Blankenship</u>, 644 F.3d at 1355 (stating that if the plan administrator's decision is <u>de novo</u> right, we "end the inquiry" and affirm).